IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KEVIN KOLSTAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:18-cv-00060 |
| ) | |
| LEEHAR DISTRIBUTORS, LLC d/b/a ) | JUDGE RICHARDSON |
| LDI INTEGRATED PHARMACY ) | |
| SERVICES, ) | |
| ) | |
| Defendant. | |

## **MEMORANDUM OPINION**

Plaintiff Kevin Kolstad filed this action against his former employer, Leehar Distributors, LLC d/b/a LDI Integrated Pharmacy Services, alleging fraudulent inducement, promissory estoppel, and tortious interference with a business relationship. Before the Court is Defendant's Motion to Dismiss (Doc. No. 15), supported by an accompanying brief (Doc. No. 16). Plaintiff filed a response (Doc. No. 19), and Defendant replied (Doc. No. 23). For the below stated reasons, Defendant's motion will be denied.

## **FACTUAL BACKGROUND**[1]

Plaintiff is a managed care professional with over twenty-four years of experience. (Doc. No. 14 ¶¶ 8, 16). In July 2017, Defendant's Chief Operations Officer, Albert Thigpen, offered Plaintiff a position as Vice President of Account Management. (*Id*. ¶¶ 8-9). Although the offered salary and bonus plan was below market rate for someone with Plaintiff's experience, the offer included an opportunity to participate in the Management Employee Incentive Program ("MEIP"), which would give Plaintiff a 0.25 percent rate of equity in the company. (*Id*. ¶¶ 8-11; Doc. No. 16-

---

[1] The cited facts are alleged in the Complaint and accepted as true for purposes of the instant motion to dismiss.

1

1 at 1). Mr. Thigpen informed Plaintiff that he and other management level employees accepted a lower salary and bonus plan in exchange for the long-term benefit of the value of equity in the MEIP. (Doc. No. 14 ¶ 11). Mr. Thigpen assured Plaintiff that the acquisition of the company would occur in the next four to five years and could result in Plaintiff receiving as much as $1.9 million for his 0.25 rate of equity. (*Id*. ¶¶ 12, 34-36). In reliance on Mr. Thigpen's statements, Plaintiff accepted and signed Defendant's Offer Letter on July 31, 2017. (*Id*. ¶ 15; *See* Doc. No. 16-1). In doing so, Plaintiff declined offers of employment with higher paying salaries from two other managed care companies. (*Id*. ¶ 16).

> The Offer Letter states in pertinent part:
>
> **Management Employee Incentive Program (MEIP)**: You will participate in the MEIP at a rate of 0.25% subject to all terms and conditions of the Plan.
>
> . . .
>
> Your employment with LDI is at-will and either party can terminate the relationship at any time with or without cause and with or without notice. In accepting our offer of employment, you certify your understanding that your employment will be on an at-will basis, and that neither you nor LDI has entered into a contract regarding the terms or duration of your employment.
>
> You further acknowledge that this offer letter (along with the final form of any referenced documents), represents the entire agreement between you and LDI and that no verbal or written agreements, promises or representations that are not specifically stated in this offer, are or will be binding upon LDI.
>
> (Doc No. 16-1 at 1-2)

On October 6, 2017, before Plaintiff signed the MEIP Agreement, Mr. Thigpen informed Plaintiff that there was a "really good chance" the company would be acquired in the next thirty days, "perhaps maybe as soon as two weeks." (Doc. No. 14 ¶ 18). Mr. Thigpen indicated he was the "linchpin" and "integral" to the acquisition going through to execution. (*Id*.). He also advised Plaintiff that nothing would change with respect to Plaintiff's role with the company, except that

Plaintiff would lead a larger team and be part of the leadership group, and that he would "get a really nice payday." (*Id.*).

On October 11, 2017, Plaintiff executed the MEIP agreement with LDI Holding Company, LLC, of which Defendant is a wholly-owned subsidiary. The MEIP agreement granted Defendant unvested Class B equity units and provided that Plaintiff's equity units would immediately vest when the company sold. (*Id.* ¶¶ 20-21; Doc. No. 16-2 at 1, 8). All unvested equity units were "subject to risk of forfeiture upon termination of employment." (Doc. No. 16-2 at 9). Unvested equity units that became subject to forfeiture were made available to be awarded to other individuals within the Company. (Doc. No. 14 ¶ 22). The MEIP agreement also included the following sections:

> Entire Agreement; Counterparts . . . There are no representations, agreements, arrangements, or understandings, oral or written, between or among the parties hereto, relating to the subject matter of this Agreement, that are not fully expressed herein.
>
> . . .
>
> No Right to Continued Employment or Service. Nothing contained in this Agreement shall be construed under any circumstances to bind the Company or any of its Affiliates to continue to employ, or retain the services of, the Recipient for any period.
>
> Adequate Review. The Recipient has consulted with such legal, financial, technical or other experts or advisors as he or she deems necessary or desirable before entering into this Agreement. The Recipient represents and warrants that the Recipient has read, understands, and agrees with the terms and conditions of this Agreement, the LLC Agreement and the Equity Incentive Plan. The Recipient has not relied upon any oral or written representation of the Company or any of the Company's Affiliates in entering into the Agreement. The Recipient acknowledges the risks of the Recipient's undertakings under this Agreement and his or her assumption of such risks and uncertainty.

(Doc. No. 16-2 ¶¶ 11, 13, 14).

From August to November 2017, Plaintiff received positive job performance feedback. (Doc. No. 14 ¶ 17). On November 9, 2017, Mr. Thigpen emailed Plaintiff alleging Plaintiff was responsible for the resignation of a co-worker. (*Id*. ¶ 25). On November 10, 2017, Mr. Thigpen called Plaintiff and terminated his employment. (*Id*. ¶¶ 22-24). Five days later, on November 15, 2017, Diplomat Pharmacy Inc. announced that it was acquiring the company for $595 million. (*Id*. ¶ 27).

**LEGAL STANDARD**

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true, as the Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018) (citing *Fritz*). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, __ F. Supp. 3d __ , 2018 WL 4561248 at * 2 (M.D. Tenn. Sept. 24, 2018).[2]

---

[2] The Court notes that as part of his discussion of the applicable standard, Plaintiff claims that "[a] Rule 12(b)(6) motion 'should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (Doc. No. 19 at 4 (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004))). It is inappropriate to invoke this standard because it has been "retired" since *Ricco* was decided. This standard is the one enunciated in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)—"a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." But *Conley's* standard was supplanted by *Twombly* and *Iqbal*. *See Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629–30 (6th Cir. 2009). As *Twombly* put it, the *Conley* "no set of facts" standard has "earned its retirement" and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard. Thus, litigants no longer should "rel[y] on the now defunct *Conley* standard for motions to dismiss." *Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 427 (6th Cir. 2014) (citation omitted).

## ANALYSIS

I. FRAUDULENT INDUCEMENT AND PROMISSORY ESTOPPEL

Plaintiff alleges Defendant fraudulently induced the contract by intentionally misrepresenting to Plaintiff that he would be compensated for his MEIP equity, and Plaintiff relied on this promise to his detriment. (Doc. No. 14 ¶¶ 33-49). Under Tennessee law, to establish a claim of either fraudulent inducement or promissory estoppel, a plaintiff must show that it reasonably relied upon the allegedly false information. *See Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630–31 (Tenn. Ct. App. 2000) (noting the elements of fraudulent inducement are: "(1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; [and] (5) an injury resulting from the reliance"); *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007) (noting proof of promissory estoppel requires: "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that [the plaintiff] reasonably relied upon the promise to [his or her] detriment") (internal citation omitted).

Defendant asserts Plaintiff's fraudulent inducement and promissory estoppel claims fail because Plaintiff cannot demonstrate he reasonably and justifiably relied on Defendant's statements due to the integration clause in the Offer Letter and MEIP contract, which disavow the alleged misrepresentations made prior to entering the contract. (Doc. No. 16 at 7). Although the question of reasonable reliance is generally one of fact for the jury, *J.C. Bradford & Co. v. S. Realty Partners*, No. W1999-01617-COA-R3-CV, 2000 WL 34411153, at *10 (Tenn. Ct. App. Aug. 14, 2000), Defendant argues Plaintiff's reliance is unreasonable as a matter of law.

In response, Plaintiff cites *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 568 (6th Cir. 2003), where the court held that

> . . . there is no rule that a merger clause makes reliance on oral representations unreasonable *per se* so as to necessarily defeat a fraudulent inducement or promissory fraud claim. . . . [N]othing suggest the Tennessee judiciary has either adopted or would adopt a *per se* rule that an integration clause makes it always unreasonable to rely on prior oral representations.

(internal citation omitted). Therefore, Plaintiff argues that under Tennessee law, the question of reasonable reliance should be reserved for the jury. (Doc. No. 16 at 6-9).

In reply, Defendant argues *Shah* is no longer good law. (Doc. No. 23 at 4-5). Defendant relies on *Guesthouse International Franchise Systems, Inc. v. British American Properties MacArthur Inn, LLC*, No. 3:07-cv-01814, 2009 WL 278214, at *7 (M.D. Tenn. 2009) (J. Trauger), where the district court noted *Shah* was not "particularly helpful" to the counter-defendant's "attempt to avoid the integration clause" because "[a] little less than a year after *Shah*, the Tennessee Court of Appeals held that 'proof of fraud in the inducement or promissory fraud is limited to subject matter which does not contradict or vary the terms that are plainly expressed in the written contract.'" *Id.* (quoting *Burton v. Hardwood Pallets, Inc.*, No. E2003-01439-COA-R3-CV, 2004 WL 572350, at *2 (Tenn. Ct. App. Mar. 22, 2004).

The district court in *Guesthouse* relied on *Burton*, an unpublished Tennessee Court of Appeals decision which held that the plaintiff's fraudulent inducement and promissory fraud claims failed as a matter of law because of the parol evidence rule. *Id.* (citing *Burton*, 2004 WL 572350 at *2). However, the case *Burton* cites in support of its holding states this rule applies *only* in the absence of fraud. *See Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990). Moreover, the same district court later held that "the parol evidence rule applies only to contract claims and does not apply where a plaintiff alleges a fraudulent misrepresentation that

7

induced that contract." *BKB Prop., LLC v. Suntrust Bank*, No. 3:08-cv-529, Memo. Op. at 20-21 (M.D. Tenn. Mar. 2, 2009) (J. Trauger) (citation omitted). Furthermore, *Gibson Guitar Corp. v. Elderly Instruments, Inc.*, No. 3:05-cv-00523, 2006 WL 1638404, at *3 (M.D. Tenn. June 8, 2006) (J. T. Campbell), another case on which Defendant relies heavily, also based its dismissal of a plaintiff's promissory fraud claim on the parol evidence rule. Although Defendant does not specifically argue that the parol evidence rule bars Plaintiff's fraudulent inducement and promissory estoppel claims, because two of the key cases on which he relies based dismissal on the parol evidence rule, the Court will examine whether it applies here.

Under Tennessee law, "parol evidence is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete and unambiguous, absent fraud or mistake or any claim or allegations thereof." *Airline Constr.*, 807 S.W.2d at 259. An examination of pertinent Tennessee case law reveals inconsistencies in the application of parol evidence rule to claims involving allegations of fraud. Nevertheless, the Court finds the better interpretation of Tennessee case law, and the one that the Tennessee Supreme Court likely would articulate at this time, is that the parol evidence rule will not bar evidence of claims involving allegations of fraud that sound in tort. In *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 587 (Tenn. Ct. App. 1980), the Tennessee Court of Appeals adopted the doctrine of promissory fraud, which was affirmed by implication by the Tennessee Supreme Court's denial of permission to appeal. In doing so, the court held the parol evidence rule "has no application to a case involving a fraudulent misrepresentation which induces the execution of a contract." *Id*. (citing *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 231 (Tenn. Ct. App. 1976)). The court explained that the plaintiff was not bringing suit on the contract, but rather, sought tort damages for fraudulent inducement, whereas the parol evidence rule only applies to suits on a contract. *Id*. (citing *Haynes*, 546 S.W.2d

at 231 (holding that the misrepresentation claim "sounded in tort" and the parol evidence rule should have no application to a case involving a misrepresentation which induced the execution of a written contract)). Numerous Tennessee courts have adhered to this same principle. *See Stamp v. Honest Abe Log Homes*, *Inc.*, 804 S.W.2d 455, 459 (Tenn. Ct. App. 1991) (holding that the parol evidence rule did not apply to tort action of fraudulent misrepresentation in an inducement of contract); *Lipford v. First Family Fin. Serv., Inc.*, No. W2003-01208-COA-R3-CV, 2004 WL 948645, at *4 (Tenn. Ct. App. April 29, 2004) (same); *Biancheri v. Johnson*, Nos. M2008–00599–COA–R3–CV & M2007–02861–COA–R3–CV, 2009 WL 723540, at *9 n. 9 (Tenn. Ct. App. Mar. 18, 2009) (same); *Ewan v. Hardison Law Firm*, No. W2011-00763-COA-R3CV, 2012 WL 1269148, at *7 (Tenn. Ct. App. Apr. 16, 2012) (same). Therefore, this Court will not apply the parol evidence rule to bar claims of fraudulent inducement of a contract.

Here, Plaintiff seeks damages for injuries caused by "Defendant's fraudulent inducement to induce Plaintiff to accept employment with Defendant [and] continue to work with Defendant." (Doc. No. 14 ¶ 42). The damages Plaintiff seeks sound in tort and are based on allegations of fraud. Therefore, the Court holds the parol evidence rule will not bar evidence of Plaintiff's fraudulent inducement and promissory estoppel claims.

Accordingly, the Court holds that these claims will survive Defendant's motion to dismiss. As there is not a *per se* rule in Tennessee that an integration clause makes a plaintiff's reliance unreasonable as a matter of law, the Court cannot determine at the motion to dismiss stage whether Plaintiff's reliance was unreasonable. *See Shah*, 338 F.3d at 566. Although the integration clause may certainly be strong evidence that Plaintiff's reliance was unreasonable, it does not foreclose Plaintiff's claims as a matter of law. *See Nichols v. A.B. Colemans, Inc.*, 652 S.W.2d 907, 908 (Tenn. Ct. App. 1983) (finding error by the trial judge in withdrawing question of reasonable

reliance from the jury in a fraud case); *Arch Wood Protection, Inc. v. Flamdexx, LLC*, 932 F. Supp. 2d 858, 865 n.5 (E.D. Tenn. 2013) (explaining the question of reasonable reliance is generally one of fact for the jury); *Exprezit Convenience Stores, LLC v. Transaction Tracking Techs., Inc.*, No. 3:05-CV-0945, 2007 WL 7604947, at *2 (M.D. Tenn. Feb. 13, 2007) ("[The Plaintiff] has a promissory estoppel claim and an integration clause is not to be used to restrict the scope of the proof with regard to fraudulent inducement or misrepresentation claims (citing *Loew v. Gulf Coast Develop., Inc.*, No. 01-A-019010CH00374, 1991 WL 220576, at *5 (Tenn. Ct. App. 1991)). Moreover, as the cases Defendant relies on to support his argument aptly point out, under Tennessee law, several factors should be considered in the determination that a plaintiff's reliance is unreasonable, including, sophistication of the parties, the length of the negotiations, whether the parties were represented by counsel, and if the plaintiff had the means to discover the alleged fraud. *See Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 122 (Tenn. Ct. App. 2001); *Laundries Inc., v. Coinmach Corp.*, No: M2011-01336-COA-R3-CV, 2012 WL 982968, at *17-18 (Tenn. Ct. App. Mar. 20, 2012). Therefore, the integration clause, on its own, cannot conclusively prove Plaintiff's unreasonable reliance. For these reasons, the Defendant's motion to dismiss the fraudulent inducement and promissory estoppel claims will be DENIED.[3]

---

[3] As noted herein, by their very nature, such claims are not *per se* defeated by the existence of the integration clause, so Plaintiff's choice of such claims enables him to sidestep for the time being any negative consequences of the merger clause. The Court notes, however, that it will hold Plaintiff to his choice—meaning that these two claims must be treated for what they are, and cannot be treated, for instance, as if they were breach-of-contract claims if and when, if ever, it becomes time to determine damages. The Court is inclined to scrutinize, for example, the claim that Plaintiff, by being fraudulently induced into an employment situation that resulted in his obtaining MEIP equity units, was injured by "los[ing the] value of his MEIP equity units." (Doc No. 1-1 at ¶ 42). The Court presently is having difficulty understanding how fraudulent inducement can be the cause of a plaintiff losing something that he or she never would have had in the first place but for the fraudulent inducement.

## II. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

Plaintiff alleges Defendant tortiously interfered with his business relationship with LDI Holding Company, LLC, Defendant's parent company. (Doc. No. 14 ¶¶ 50-55). To survive a motion to dismiss a tortious interference of a business relationship claim, a plaintiff must plead facts sufficient to establish the following elements:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means . . . and finally, (5) damages resulting from the tortious interference.

*Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (internal citation omitted).

Defendant argues Plaintiff's tortious interference with a business relationship claim fails as a matter of law because: (1) Defendant has a unity of interest privilege with a party to the MEIP Agreement—LDI Holding Company, LLC—which conclusively defeats any claim that Defendant tortuously interfered with the MEIP Agreement; and (2) Plaintiff cannot prove Defendant maliciously or intentionally, by improper motive or means, *caused* LDI Holding Company, LLC to breach the MEIP Agreement or end its relationship with Plaintiff because Defendant's termination of Plaintiff's employment was specifically authorized under the MEIP agreement. The Court will examine each argument in turn.

1. THE UNITY OF INTEREST PRIVILEGE

A claim of tortious interference with a contract or a business relationship requires the existence of a three-party relationship—the plaintiff, the breaching party, and the interfering party—reflecting the principle that a party to a contract may not be liable for interference with the

contract. *See Cambio Health Sols., LLC v. Reardon*, 213 S.W.2d 785, 789 (Tenn. 2006) ("[The] basic principle under Tennessee law that a party to a contract cannot be liable for tortious interference with that contract"). Thus, the law in Tennessee recognizes a privilege against tortious interference claims when there is a unity of interest between the allegedly interfering party and the allegedly breaching party. *Waste Conversion Sys. v. Greenstone Indus.*, 33 S.W.3d 779, 782 (Tenn. 2000). Defendant argues that it is privileged to interfere in LDI Holding Company, LLC's business relationships because it is a wholly-owned subsidiary of LDI Holding Company, LLC. (Doc. No. 16 at 10). In response, Plaintiff asserts that this privilege applies only to parent companies that interfere in business relationships between a third party and a subsidiary, and not the other way around. (Doc. No. 19 at 16). Thus, Plaintiff argues Defendant cannot assert the unity of interest privilege in the matter at hand. The Court agrees.

Defendant has not provided, and the Court has not found, a case in which a Tennessee court allowed a subsidiary to assert the unity of interest privilege in a claim involving interference with a business relationship with its parent company. In fact, the Tennessee Supreme Court specifically held that "*a parent company is privileged* to interfere in the contractual relations of a wholly-owned subsidiary." *Id*. at 784 (emphasis added). Moreover, the Court does not believe that the apparent rationale for granting such privilege to a parent company would apply to support granting such a privilege to a subsidiary. In *Waste Conversion*, the Tennessee Supreme Court cited to *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771-72 (1984), which discussed the justification for the unity of interest privilege and noted "the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interest." A subsidiary does not have the same level control over a parent company. Therefore, a parent company's contract with a third party is not a subsidiary's contract the same way that a subsidiary's contract with a third party is

the parent company's contract. Accordingly, the Court predicts that the Tennessee Supreme Court would not hold that the unity of interest privilege applies in this case, where a subsidiary has allegedly interfered with the business relationship of a parent company and a third party. Thus, the Court will not apply the unity of interest privilege here.

2. PLAINTIFF ADEQUATELY PLED THE ELEMENTS OF HIS CLAIM

Next, Defendant argues Plaintiff has not pleaded facts to credibly show that Defendant acted with an improper motive or improper means because Defendant's decision to terminate Plaintiff was authorized under both the Offer Letter and the MEIP Agreement; thus, according to Defendant, Plaintiff has not pleaded facts to demonstrate the fourth element of his tortious interference with a business relationship claim. (Doc. No. 16 at 11). In support of his argument, Defendant cites to *Trau-Med of America, Inc. v. Allstate Insurance Co.*, 71 S.W.3d 691, 699 (Tenn. 2002) and *Watson's Carpet and Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 178 (Tenn. Ct. App. 2007). The Court finds Defendant's reliance on these cases inapposite.

In *Trau-Med*, the Tennessee Supreme Court adopted the tort of intentional interference with a business relationship and embraced a broad view of what can constitute improper motive and improper means. 71 S.W.3d at 699 n.5, 701. To demonstrate that a defendant acted with an improper motive when interfering with plaintiff's business relationship, the Tennessee Supreme Court explained that "the plaintiff [must] demonstrate that the defendant's predominate purpose was to injure the plaintiff." *Id*. at 699 n.5 (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 307–08 (Utah 1982)). In regards to the standard for determining whether a defendant acted with improper means when interfering with a business relationship, the court explained:

> [I]n the attempt to provide further guidance, we cite the following methods as some examples of improper interference: those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud,

13

> misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

*Id*. (citing *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1986)).

Here, Plaintiff alleged in the Amended Complaint that Defendant's decision to terminate Plaintiff was "perpetrated to both avoid paying Plaintiff for the value of his MEIP Equity Units as promised, and to redistribute MEIP Equity Units to others at the Company who would therefore receive a larger payment in the impending acquisition." (Doc. No. 14 ¶ 54). Viewing these factual allegations in a light most favorable to Plaintiff, these allegations at the very least constitute sharp dealing, which is one of the examples of improper means offered by the Tennessee Supreme Court in *Trau-Med*. 71 S.W.3d at 699 n.5. *See also Watson's Carpet*, 247 S.W.3d at 176 ("It is important to note that *either* 'improper motive' or 'improve means' will suffice." (citing *Trau-Med*, 71 S.W.3d at 699 n.5)). Accordingly, the Court does not see how Defendant's citation to *Trau-Med* is helpful, where Plaintiff has alleged acts the Tennessee Supreme Court specifically prescribed as examples of "improper means." *Id*.

Similarly, the Court finds the Tennessee Court of Appeals decision in *Watson's Carpet* equally unpersuasive. In *Watson's Carpet*, the plaintiff, a carpet supplier, brought a tortious interference with a business relationship claim against another carpet supplier that refused to sell a certain brand of carpet to the plaintiff. 247 S.W.3d at 170. The Court noted "[t]he act that caused [the plaintiff] damage was [the defendant's] refusal to deal, not any other action by [the defendant] such as defamation, etc. . . . ." and "an unwillingness to deal with a person or entity for any reason not independently unlawful is not 'improper.'" *Id*. at 178. Thus, the Court found that the defendant did not act improperly because "a supplier has a privilege that allows it to refuse to sell and that such a refusal to deal is not improper" and "the fourth element of the tort [] requires [the defendant]

14

act improperly before liability can attach." *Id*. Because there was no evidence of improper motive or improper means on the part of the defendant, the court granted the defendant's motion for summary judgment and dismissed the plaintiff's intentional interference with a business relationship claim. *Id.* at 179.

Here, similar to the defendant's right to refuse to sell carpet to the plaintiff in *Watson's Carpet*, Defendant had a contractual right to terminate Plaintiff because of his status as an at-will employee. However, unlike the plaintiff in *Watson's Carpet*, Plaintiff properly pleaded that Defendant acted with improper means when exercising this contractual right. *See XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 186 (E.D.N.Y. 2016) (examining comparable New York law and noting that "[a]t-will contracts can support a claim for tortious interference with business relations." (citing *Waste Serv., Inc. v. Jamaica Ash & Rubbish Removal Co.*, 691 N.Y.S.2d 150, 151 (2d Dep't 1999))). Accordingly, the Court finds *Watson's Carpet* distinguishable. Plaintiff's allegations of improper means discussed above—which must be taken as true, and construed in Plaintiff's favor, at the motion to dismiss stage—allow Plaintiff's claim of tortious interference with a business relationship to survive.

The Court holds that Plaintiff has sufficiently stated a claim for tortious interference with a business relationship.[4] Accordingly, Defendant's motion to dismiss Plaintiff's tortious interference with a business relationship claim will be DENIED.

---

[4] Although Plaintiff's claim for tortious interference (Count 3) survives Defendant's motion to dismiss, the Court believes that it is somewhat in tension with Counts 1 and 2. In those counts, Plaintiff complains that Mr. Thigpen fraudulently induced Plaintiff into, *inter alia*, the business relationship with Defendant's parent company; in other words, he complains about that business relationship coming into existence in the first place. In Count 3, by contrast, no longer complaining about the *existence* of that business relationship, Plaintiff complains about the *disintegration* of that business relationship. To the Court, these complaints seem to conflict with one another. Nevertheless, Plaintiff has plead facts that meet the elements of each of his individual claims. Furthermore, the Federal Rules of Civil Procedure allow Plaintiff to make alternative claims. *See* Fed. R. Civ. P. 8(d)(2). Moreover, there is no basis to require Plaintiff to choose between conflicting theories at this stage. Therefore, all of Plaintiff's claims at least survive the motion to dismiss

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 15) will be **DENIED**.

An appropriate Order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE